UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JOE JESSE MONGE and
ROSANA ELENA MONGE,

      Debtors.

Case No. 19-10475-t11

## OPINION

    Before the Court is Debtors' motion to reconsider a default order granting their mortgage lender relief from the automatic stay so it could continue its foreclosure action on Debtors' house. The lender opposes the motion to reconsider, arguing that there are no grounds to support it and that the motion is moot because Debtors conveyed the house to their son in an effort to thwart the foreclosure. The matter has been fully briefed and argued. The Court concludes that, regardless of why Debtors did not timely object to the lender's stay relief motion, stay relief would have been granted in any event, based on ample cause. The Court further concludes that the asserted grounds to reconsider are insufficient. Finally, the Court concludes that granting the motion to reconsider would not provide any relief to Debtors, given that they no longer own the house. The Court therefore will deny the motion.

    I.    FACTS

    The Court takes judicial notice of the dockets in this case and in D-307-CV-2016-01838, filed in the Third Judicial District Court, State of New Mexico. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (courts "may exercise [their] discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly

upon the disposition of the case at hand"); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket).

For the purpose of ruling on the motion, the Court finds:

The Debtors filed this case as a chapter 13 case on March 6, 2019. In their petition, Debtors disclosed that they lived at 105 Thoroughbred Court, Sunland Park, New Mexico 88063 [1] and listed their mailing address as P.O. Box 13051, El Paso, TX 79913.

On their Schedule A/B, Debtors valued the house at $250,000.

The house is encumbered by a mortgage held by Bank of New York Mellon f/k/a The Bank of New York, securing a total indebtedness of $1,628,389 as of July 31, 2019.

Debtors are in arrears on the mortgage dating back to 2008. The payment arrears total more than $938,000. On the petition date, foreclosure proceedings on the house had been pending in New Mexico state court since 2016. On January 10, 2019, the state court entered an *in rem* foreclosure judgment,[2] and a special master's sale of the house was scheduled for March 6, 2019. This bankruptcy case stayed the sale.

The chapter 13 case was a non-starter; Debtors never even filed a plan. In May 2019, Debtors converted the case to a chapter 11 case. Debtors' counsel withdrew. Shortly thereafter, Debtors, acting *pro se*, filed a motion for an extension of time to file their schedules and other documents. In that motion, Debtors again specified their mailing address as P.O. Box 13051, El Paso, Texas 79913.

---

[1] In the motion, Debtors use the street address of 105 Thoroughbred Court, Santa Teresa, New Mexico 88008. The note and mortgage also list this address. The bankruptcy petition, on the other hand, uses the same street address but lists the city as Sunland Park, not Santa Teresa. It is not clear from the record why the house is sometimes said to be in Sunland Park and sometimes said to be in Santa Teresa, but the variation does not appear to be relevant to the issue before the Court.
[2] The foreclosure judgment is *in rem* because Debtors received a bankruptcy discharge on April 20, 2018, in case no. 09-30881-hcm, filed on April 27, 2009 in the Western District of Texas.

Debtors have done essentially nothing in the case since it was converted to chapter 11 (for example, Debtor have not filed any operating reports, nor have they filed a plan or disclosure statement).[3] Stay relief motions were filed by two auto lenders. Debtors did not respond to either of the motions and the Court entered default orders for both.

On September 30, 2019, the bank filed a motion for relief from the automatic stay and for abandonment, so it could complete the foreclosure action on the house. Notice of the stay relief motion and the 21-day objection period was sent to Debtors at P.O. Box 13051, El Paso, TX 79913, in compliance with Bankruptcy Rules 7004 and 9014. No objections to the stay relief motion were filed.

On November 6, 2019, the Court entered a default order granting the bank relief from the automatic stay and deeming the house abandoned pursuant to 11 U.S.C. § 554.[4] On November 8, 2019, the Bankruptcy Noticing Center sent notice of the default order by first-class U.S. Mail to Debtors at P.O. Box 13051, El Paso, TX 79913, and by email to joeandrosanamonge@live.com. A special master's sale was scheduled for January 15, 2020.

On January 7, 2020, two months after the default order was entered and eight days before the rescheduled special master's sale, Debtors filed the motion to reconsider, requesting an expedited hearing on reconsideration of the entry of the default order.

In its response to the motion to reconsider, the bank disclosed that Debtors conveyed the house to their son Joseph J. Monge, Jr. on January 14, 2020. A copy of the deed is attached to the bank's response.

---

[3] Debtors are designated as small business debtors. Their 300-day deadline to file a plan expired March 19, 2020.

[4] All statutory references are to 11 U.S.C. unless otherwise noted.

Joe Monge Jr. filed a chapter 13 bankruptcy case in this Court on January 15, 2020. The case was dismissed on March 6, 2020 because he did not file required documents within 45 days of the petition date. *See* § 521(i)(1).

The Court held a preliminary hearing on the motion to reconsider on February 10, 2020. At the hearing Debtors admitted that they had transferred the house to their son. The Court ordered Debtors to file an affidavit stating, under penalty of perjury, why they did not respond to the stay relief motion.

On February 20, 2020, Debtors filed a document titled "Affidavit and Motion requesting approval of objection to order granting relief of the automatic stay protection . . . ." The document is not in the form of an affidavit and is not sworn under penalty of perjury.

The bank filed a response to the affidavit and motion, arguing that Debtors did not follow the Court's instructions, did not show excusable neglect, and cannot be granted meaningful relief because they no longer own the house. The Court held a final hearing on the motion to reconsider on March 18, 2020.

## II. DISCUSSION

A. Motions for Reconsideration.

Neither the Federal Rules of Civil Procedure nor the Federal Rules of Bankruptcy Procedure recognize motions for reconsideration. *See Hatfield v. Board of Comm'rs for Converse County,* 52 F.3d 858, 861 (10th Cir. 1995) ("The Federal Rules of Civil Procedure recognize no 'motion for reconsideration.'"). The timing of the motion generally determines whether a motion requesting the Court to reconsider a judgment or order will be considered under Fed. R. Civ. P. 59 or 60. *See Hatfield,* 52 F.3d at 861 ("if the motion is filed within ten days [currently 14 for bankruptcy matters] of the . . . entry of judgment, the motion is treated as a motion to alter or

amend the judgment under Fed. R. Civ. P. 59(e)" but, "[a]lternatively, if the motion is filed more than ten [currently 14] days after the entry of judgment, it is considered as a motion seeking relief from the judgment under Fed. R. Civ. P. 60(b).") (citation omitted).

Fed. R. Civ. P. 59 is made applicable to bankruptcy cases by Fed. R. Bankr. P. 9023. *See In re Sandia Resorts Inc.,* 2016 WL 3150998, at *4 (Bankr. D.N.M.).

Here, the motion to reconsider was filed two months after the default order was entered. Fed. R. Civ. P. 60, made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024, therefore governs the motion. *Id.*

B.  Fed. R. Civ. P. 60(b).

Fed. R. Civ. P. 60 (b) enumerates six grounds for relief:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Debtors argue that they did not respond to the stay relief motion because they did not receive notice of it. Rather, they assert that the stay relief motion was erroneously served on their former attorney and the chapter 13 trustee. They also assert that the bank has consistently filed documents using the wrong case number and failed to appear at the § 341 meeting.

Debtors argue further that the Court should reconsider the default order because "new fraudulent information about the outstanding loan on th[e property] has been found, and [Debtors]

-5-
Case 19-10475-t11    Doc 100    Filed 04/02/20    Entered 04/02/20 15:13:16 Page 5 of 11

are in the process of returning to the [state d]istrict [c]ourt to set aside the [foreclosure j]udgment . . . ."[5]

Based on the substance of Debtors' arguments, the Court will consider the motion under Rules 60(b)(1), 60(b)(2), 60(b)(3), and 60(b)(6).

    1.    <u>Rule 60(b)(1); Excusable Neglect</u>. The Rule 60(b)(1) standard for excusable neglect was set forth in *Pioneer Investment Services Company v. Brunswick Associates. Limited Partnership*, 507 U.S. 380, 395 (1993). In "determining what sorts of neglect will be considered 'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. Keeping in mind, however, that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer,* 507 U.S. at 392. Nor does "[*p*]*ro se* status… 'excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.'" *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (quoting *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir. 1994)).

The *Pioneer* court identified four factors that inform the issue whether the circumstances of a case reasonably give rise to a finding of excusable neglect: (1) "the danger of prejudice to the [non-moving party], (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Id.* In this circuit, the third factor is of critical importance in determining whether neglect is excusable. *United States v. Torres*, 372 F. 3d 1159,

---

[5] Debtors also object to the language in the default order regarding abandonment. They assert that the house "is the permanent home of [Debtors]" and "has not been abandoned." This argument, which is based on a (perhaps understandable) misunderstanding of "abandonment" under the Bankruptcy Code, will not be addressed.

1163 (10th Cir. 2004) ("fault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable") (quoting *City of Chanute, Kan. v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994)).

Here, the first two factors—prejudice to the non-moving party and the length of the delay—are inextricable. The foreclosure proceedings have been pending for at least three years, the state court foreclosure judgment was entered over a year ago, and three months elapsed between the bank's stay relief motion and Debtors' motion to reconsider. Further delay in the resolution of the bank's stay relief motion would prejudice the bank's ability to exercise its right to realize on its collateral, after 12 years of nonpayment.[6] These factors weigh against a finding of excusable neglect.

Likewise, and most importantly, the reason for the delay is not excusable. Debtors maintain that they never received notice of the stay relief motion. But the stay relief motion and notice of deadline to object were mailed to the Debtors' address listed on their bankruptcy petition and mailing matrix. It is their official address for this case. Debtors have never filed any updates of mailing or street addresses as required by Fed. R. Bankr. P. 4002(a)(5).[7]

Other than their unproven assertions that their internet access is spotty, Debtors do not explain why they neglected to review the docket in the case or get their mail from their post office box. *See Freeman v. Loomas* (*In re Loomas*), 501 B.R. 461, *4 (10th Cir. BAP 2013) (unpublished) (appellant did not demonstrate excusable neglect where he failed to monitor his case docket; appellant had "access to his case docket via" public terminals, including at the bankruptcy court);

---

[6] In the initial foreclosure action, filed circa 2007, the bank and Debtors agreed to a loan modification. This may explain some of the delay in the foreclosure process.

[7] Debtors do not explain how the fact that notices were also sent to their former attorney or that the bank did not appear at the § 341 meeting affected their ability to receive notice of the stay relief motion.

*Warrick v. Birdsell* (*In re Warrick*), 278 B.R. 182, 187 (9th Cir. BAP 2002) (unpublished) ("it is the party's affirmative duty to monitor the dockets") (citations omitted). Debtors are familiar with bankruptcy procedures. They filed a chapter 7 bankruptcy case in the Western District of Texas in 2009, were involved in years of litigation is that case, and obtained a discharge in 2018. They were involved in years of litigation in another bankruptcy case before this Court, also involving the house.[8] Debtors have filed documents in this case and have appeared at hearings when it is critical to protect their interests.

To the extent Debtors argue that their chronic medical conditions limited their ability to learn of or respond to the stay relief motion, they did not provide any evidence to support the assertion. "To prevail on grounds of excusable neglect, the movant must provide reasonably sufficient facts to show that the reason for the failure to appear was excusable." *In re Walker*, 332 B.R. 820, 831 (Bankr. D. Nev. 2005) (citing *Pioneer*, 507 U.S. at 395).

The bank argues that Debtors' transfer of the house to Joe Monge Jr. just before the foreclosure sale supports an inference that Debtors acted with "dilatory intent." Because the other factors weigh against finding excusable neglect, the Court need not address whether Debtors have acted in good faith. In general, the Court does not question Debtors' good faith. It will note, however, that while Debtors seem very anxious to keep their house (or at least keep it in the family), they have not been willing to pay the bank's mortgage. This case would have a different complexion if Debtors had begun making mortgage or adequate protection payments a year ago.

2. <u>Rule 60(b)(2); Newly Discovered Evidence</u>. Debtors argue that the discovery of new "fraudulent" evidence requires the Court to reconsider the default order. This argument must be overruled.

---

[8] *See Monge v. Rojas*, adv. pro. 15-1079.

Debtors do not describe the evidence or explain its possible impact on the Court's consideration of the stay relief motion. Debtors admit, however, that the evidence was discovered on January 10, 2019—well before the stay relief motion was filed—but do not explain why that evidence could not have been presented to the Court in response to the motion. The newly discovered evidence argument, therefore, provides no basis for reconsidering entry of the default order. *See Wilkin v. Sunbeam Corp.*, 466 F.2d 714, 717 (10th Cir. 1972) ("judgment may be set aside for fraud discovered *after* the entry of judgment") (emphasis added).

Further, the documents attached to their "affidavit," filed February 20, 2020, do not appear to be newly discovered or of particular significance. There is a three-page document, apparently a printout of a web page, relating to a judgment entered against a mortgage lender in Florida in 2014. There are various documents related to the house (for example, a letter from the County assessor, a property record card, a transaction history report for the house, and a history of loans for the house), and lengthy motions or objections filed by Debtors in the foreclosure action. The Court concludes that, to the extent any of the documents are newly discovered, they do not provide a basis for setting aside the default order.

3. <u>Rule 60(b)(3); Fraud</u>. "Relief under Rule 60(b)(3) may be granted only when the motion is substantiated by clear and convincing evidence[.]" *Velasquez v. Clinton*, 1999 WL 1268341, at *2 (10th Cir.) (citing *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999). Debtors make vague allegations about fraudulent conduct in 2006 but have not shown fraud by anything close to clear and convincing evidence. Thus, their allegations of fraud are not grounds to set aside the default order.

In any event, if Debtors believe they have discovered a new defense to the bank's foreclosure action based on fraud, they must take that up with the state court. Because the state

-9-
Case 19-10475-t11    Doc 100    Filed 04/02/20    Entered 04/02/20 15:13:16 Page 9 of 11

court entered a final judgment of foreclosure over a year ago, Debtors must request relief from the state court, not the bankruptcy court.

4. <u>Rule 60(b)(6); Other Reasons Justifying Relief</u>. Fed. R. Civ. P. 60(b)(6) allows the Court to relieve a party from a final order for "any other reason that justifies relief." "Rule 60(b)(6) has been described by [the Tenth Circuit] as a grand reservoir of equitable power to do justice in a particular case." *Van Skiver v. United States,* 952 F.2d 1241, 1244 (10th Cir. 1991) (internal quotation marks and citations omitted). Rule 60(b)(6) enables the Court "to vacate judgments whenever such action is appropriate to accomplish justice." *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863 (1988) (quoting *Klapprott v. United States,* 335 U.S. 601, 614-15 (1949)). However, relief under Rule 60(b)(6) is generally only available under extraordinary circumstances,[12] and a party may not rely on this catch-all provision if the relief requested falls within Rule 60(b)'s other enumerated grounds for relief. Here, Debtors' motion falls within Rules 60(b)(1), 60(b)(2), and 60(b)(3), discussed above. It therefore would not be appropriate for the Court to grant Debtors relief under Rule 60(b)(6).

C. <u>Effect of Conveying of the House to Joe Monge Jr</u>.

It is undisputed that Debtors transferred the house to their son on January 14, 2020, the eve of the rescheduled special master's sale. They likely had the right to do that without Court approval because the house had been abandoned from the estate.[13] Because the house is no longer estate property, however, granting the motion to reconsider would not afford Debtors relief. The bank is

---

[12]*See Liljeberg*, 486 U.S. at 863 (Rule 60(b)(6) "should only be applied in 'extraordinary circumstances.'") (quoting *Ackermann v. United States,* 340 U.S. 193 (1950)); *Zurich North America v. Matrix Serv., Inc.,* 426 F.3d 1281, 1293 (10th Cir. 2005) ("Rule 60(b)(6) relief is even more difficult to attain and is appropriate only when it offends justice to deny such relief.") (quotation marks and citations omitted).
[13] It is ironic that Debtors seek to set aside the very default order which allowed them to transfer the house without committing a major Bankruptcy Code violation.

-10-
Case 19-10475-t11    Doc 100    Filed 04/02/20    Entered 04/02/20 15:13:16 Page 10 of 11

proceeding *in rem* and the house is not estate property, so the automatic stay, even if reinstated, would not prevent the bank from rescheduling the special master's sale. *See* § 362(a)(2)-(4). There is no evidence that Joe Monge Jr. has reconveyed the house to Debtors. Hence, withdrawing or amending the default order would serve no purpose.

### III. CONCLUSION

For reasons that still have not been made clear, Debtors did not respond to the bank's stay relief motion. The default order resulted. Debtors in good faith filed the motion to reconsider but did not provide a sufficient factual or legal basis for doing so. Furthermore, Debtors' decision to convey the house to their son means that the Court could not grant them relief if it wanted to. The motion to reconsider therefore will be denied, by separate order.

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 2, 2020

Copies to: Electronic notice recipients